### DURYEA et al. v. VOSBURGH.

(*Supreme Court, General Term, Second Department.* June 25, 1888.)

1. PRINCIPAL AND AGENT—ACTIONS AGAINST AGENT—EVIDENCE.
In an action by vendees against the agent who made the sale to recover that part of the purchase money retained by defendant without plaintiffs' knowledge, the issue being whether defendant was the agent of plaintiffs or of the vendor, proof

of the value of the property sold is competent as tending to explain the motives of the parties to the contract; and evidence that the action was not begun until after defendant had dissolved partnership with plaintiffs, and become their business rival, is also competent, as showing plaintiffs' motive in bringing the action; but evidence as to the motives of the vendor, and defendant's influence over him, is irrelevant.

2. SAME. .
    In such case, it is competent for defendant to show that he had the property for sale some time before the sale to plaintiffs; that he had made efforts to sell; and that the vendor had brought persons to him for the purpose of his effecting a sale to them.

3. WITNESS—EXAMINATION—LEADING QUESTIONS.
    To allow leading questions is within the discretion of the court when the questions are upon a point relevant to the issue.

Appeal from circuit court, Kings county.

This is an action by Wright Duryea and William Duryea against William C. Vosburgh. The sale referred to in the opinion was of the interest of one E. S. Peck in the business and property of the firm of W. C. Vosburgh & Co., in which firm defendant was a partner. After the sale, plaintiffs became partners in the firm in place of Peck; but before this action was begun Vosburgh withdrew from the firm, and went into the same line of business by himself. There was a judgment for defendant, and plaintiffs appeal.

O. N. & E. T. Payne, for appellants. D. W. Northup, (B. F. Tracy, of counsel,) for respondent.

PRATT, J. This is an action brought by the plaintiffs against the defendant to recover from him the sum of $6,000, and interest, belonging to them, on the ground that defendant, having, as their agent, undertaken to purchase of one E. S. Peck property for them, deceitfully obtained out of the purchase money they paid Peck said $6,000, and wrongfully, as against them, appropriated the same to his own use. The defendant claimed that he had been authorized by Peck to sell; and that, if he succeeded in selling, he should receive all he obtained over $45,000. The sale was made to the plaintiff for $51,750. The issue, therefore, was, was· Vosburgh the agent of the plaintiffs to buy, or was he selling for Peck under their agreement? Such an issue involved the intent of the parties and a wide range of circumstances. We will first notice the exceptions taken during the trial.

Proof as to the value of the property was received under objection. We think this was a proper subject of cross-examination, tending to explain the motives of the parties to the contract; and, even if it was immaterial, it was harmless to the plaintiffs. We also think the objection to the evidence that suit was not commenced until after Vosburgh had left the business, and started a rival concern, was properly denied. It had a bearing in showing motive for bringing the suit, and animus of the witness. The evidence of Peck as to the influence on his mind of Vosburgh's threat to wind up the business was properly excluded. The motives of this witness in that regard were wholly irrelevant and immaterial, and the same may be said of the exception to the question whether Peck would have sold for less than $51,000 in case Vosburgh had not intervened. The motives and mental operations of Peck were not in issue, and were not binding upon either party. The question was whether Peck had authorized Vosburgh to sell, not what his motives were in making the sale. The exception to the paper offered in evidence, also to the denial of defendant that he had ever agreed, were not well taken. The paper formed a part of the negotiation prior to the sale, and was shown the plaintiffs, and was material for the jury in weighing the probabilities of the case. The denial was direct to evidence introduced by the plaintiffs. The question was leading, but it was within the discretion of the trial judge to permit it. It was also competent for the defendant to show that he had the property for sale some time previous to the sale to the plaintiffs, and had made efforts to

effect a conveyance. This evidence, in connection with the proof that Peck had made engagements with gentlemen for Vosburgh to see them in reference to selling this interest, had a direct tendency to prove that Vosburgh was acting for Peck, and to contradict Peck in his statement that he had not authorized Vosburgh to sell. The fraudulent intent of defendant was in issue, and the surrounding circumstances were all proper to be submitted to the jury upon that question. Upon such an issue, great latitude is permitted in proof of surrounding circumstances. This proposition is too plain to require citation of authorities. There was great conflict in the testimony, but we cannot say that it so greatly preponderates in favor of the plaintiff as to warrant setting aside the verdict. It is plain that Vosburgh was to receive no benefit from the fact that the plaintiffs were to come into the firm. They were not expected to increase the capital, and were unacquainted with the business. On the other hand, Vosburgh was to lose an active partner, who had been brought up in the business. Besides, it is not claimed that the plaintiffs were to pay Vosburgh anything for his services as agent. It is probable the jury did not credit the evidence of Peck; and, with his testimony discredited, it is difficult to say that the probabilities of the case were not on the side of defendant. The judgment must be affirmed, with costs.